UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

BILAL IBN ABDOUS SABUR,          :

           Plaintiff          :   CIV. ACTION NO. 3:26-CV-636

         v.          :          (JUDGE MANNION)

DANIEL FRANTZ, *et al.*,          :

          Defendants          :

## MEMORANDUM

This is a prisoner civil rights case filed pursuant to 42 U.S.C. §1983. For the reasons set forth below, the complaint will be dismissed and this case will be closed.

## I.   BACKGROUND

Plaintiff, Bilal Ibn Abdous Sabur, brings the instant case pursuant to 42 U.S.C. §1983, alleging that defendants violated his rights by failing to adequately treat his vision problems. (Doc. 1). According to the complaint, Sabur was an inmate in SCI-Rockview on March 3, 2024, when he was seen by defendant Daniel Frantz, an ophthalmologist, for treatment of his

keratoconus[1] and glaucoma. (*Id.* at 4). The complaint asserts that Sabur is legally blind as a result of these conditions. (*Id.*) Defendant Frantz was allegedly supposed to prescribe Sabur new glasses during the appointment in 2024, but purportedly told Sabur that due to defects in the equipment available to him he could not determine the proper prescription. (*Id.*) Frantz allegedly told Sabur that he would receive new glasses "in a couple weeks." (*Id.*) Sabur, however, allegedly never received the new glasses. (*Id.*)

The complaint alleges that approximately three weeks later, on March 27, 2024, Sabur was transported to an outside facility, the Nittany Eye Institution, for treatment. (*Id.* at 7). The complaint alleges that Sabur was seen by a doctor, defendant Zellis, who had previously prescribed contacts in 2022 that were "completely wrong." (*Id.*) Sabur purportedly "[did] not agree" with the "actual coordinates" during the ensuing eye exam. (*Id.*) The doctor allegedly told Sabur that he would "send a sample out to Rockview." (*Id.*) The "sample" allegedly arrived at SCI-Rockview "a few week[s] later," but was "wrong." (*Id.*) Sabur's "prior coordinate" was then faxed back to the Nittany Eye Institution. (*Id.*) The doctor at Nittany Eye Institution then sent a

---

[1] "Keratoconus is an eye condition in which the clear dome-shaped front of the eye, called the cornea, gets thinner, steeper, and bulges outward into a cone shape." *Keratoconus*, MAYO CLINIC, https://www.mayoclinic.org/diseases-conditions/keratoconus/symptoms-causes/syc-20351352, last visited Apr. 17, 2026.

2

prescription to Sabur, but "never took into account the faxed [sic] of actual prescription." (*Id.*) Sabur alleges that the prescription glasses he "was wearing prior was correct." (*Id.*)

The complaint alleges that after Sabur returned to SCI-Rockview following his appointment with Zellis, he spoke with the prison's correctional healthcare administrator ("CHCA"), defendant Mauk, about getting new contact lenses. (*Id.* at 10). Mauk allegedly told him that a prescription had been issued by Nittany Eye Association and that Sabur had been issued exactly what was required by that prescription. (*Id.*) Mauk allegedly told Sabur that he could not be seen about his eye conditions until the following year when his prescription expired. (*Id.*) Sabur purportedly sent another request to correct his prescription to Mauk on June 28, 2024, but never received a response. (*Id.*) The complaint further alleges that although he was prescribed "magnify[ing] glass[es] back in 2022" he "just received them." (*Id.*)

The complaint also asserts that Sabur spoke with the prison's deputy superintendent, defendant Rowe, about receiving eyeglasses and contact lenses, and Rowe allegedly told him that he was receiving glasses and contact lenses according to the prescription he had. (*Id.* at 12). Rowe purportedly knew from conversations with Sabur that Sabur could not see with the prescription he had from Nittany Eye Institution. (*Id.*) Rowe

3

purportedly told Sabur that he could file a request for accommodations pursuant to the Americans with Disabilities Act ("ADA"). (*Id.*) Sabur allegedly began filing grievances about his perceived lack of treatment, and Rowe purportedly stopped talking to Sabur about the issue at that point. (*Id.*)

The complaint asserts claims for cruel and unusual punishment and deliberate indifference to a serious medical need in violation of the Eighth Amendment, negligence under Pennsylvania law, violation of the ADA, retaliation and harassment in violation of the First Amendment, and abuse of process in violation of the Fourteenth Amendment. (*Id.* at 6, 9, 11, 13). The complaint names Frantz, Zellis, Mauk, and Rowe as defendants. (*Id.* at 2-3). Sabur seeks damages and injunctive relief. (*Id.* at 6, 9, 11, 13).

## II.    DISCUSSION

This court must review a complaint when "a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." 28 U.S.C. §1915A(a). If a complaint fails to state a claim upon which relief may be granted, the court must dismiss the complaint. *Id.* §1915A(b)(1). The court has a similar screening obligation regarding actions filed by prisoners proceeding *in forma pauperis*. *Id.* §1915(e)(2)(B)(ii) ("[T]he court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim on which relief may be granted.").

4

In screening legal claims under Sections 1915A(b) and 1915(e)(2)(B), the court applies the standard governing motions to dismiss filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See, e.g.*, *Coward v. City of Philadelphia*, 546 F. Supp. 3d 331, 333 (E.D. Pa. 2021); *Smith v. Delaware*, 236 F. Supp.3d 882, 886 (D. Del. 2017).

To avoid dismissal under Rule 12(b)(6), a plaintiff must set out "sufficient factual matter" to show that his claim is facially plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This plausibility standard requires more than a mere possibility that the defendant is liable for the alleged misconduct. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Id.* at 679.

When evaluating the plausibility of a complaint, the court accepts as true all factual allegations and all reasonable inferences that can be drawn from those allegations, viewed in the light most favorable to the plaintiff. *Id.* However, the court must not accept legal conclusions as true, and "a formulaic recitation of the elements of a cause of action" will not survive a district court's screening under Section 1915A and 1915(e)(2). *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).

Courts must liberally construe complaints brought by *pro se* litigants. *Sause v. Bauer*, 585 U.S. 957, 960 (2018). *Pro se* complaints, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

## A.    Federal Claims

Plaintiff's constitutional claims are filed pursuant to 42 U.S.C. §1983. Section 1983 authorizes redress for violations of constitutional rights and provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. §1983. Thus, to establish a claim under Section 1983, a plaintiff must demonstrate that the challenged conduct was committed by a person acting under color of state law and deprived the plaintiff of rights, privileges, or immunities secured by the Constitution or laws of the United States. *Lake v. Arnold*, 112 F.3d 682, 689 (3d Cir. 1997). By its terms, Section 1983 does not create a substantive right, but merely provides a method for vindicating

federal rights conferred by the United States Constitution and the federal statutes that it describes. *Baker v. McCollan*, 443 U.S. 137 (1979).

The court begins with Sabur's Eighth Amendment claims. Although he frames his complaint as advancing both cruel and unusual punishment and deliberate indifference claims, the gravamen of both claims is defendants' purportedly deficient medical care. Both claims will accordingly be analyzed under the standard for deliberate indifference to a serious medical need.

To state a claim for deliberate indifference, a plaintiff must allege "(i) a serious medical need, and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need." *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 582 (3d Cir. 2003) (citing *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999)). A serious medical need is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would recognize the necessity for a doctor's attention." *Monmouth Cnty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987). A prison official acts with deliberate indifference when he "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). "A plaintiff's mere

disagreement as to the proper medical treatment" is not sufficient to support a deliberate indifference claim. *Lanzaro*, 834 F.2d at 346.

The deliberate indifference standard "affords considerable latitude to prison medical authorities in the diagnosis and treatment of the medical problems of inmate patients," and courts must accordingly "'disavow any attempt to second-guess the propriety or adequacy of their particular course of treatment' so long as it 'remains a question of sound professional judgment.'" *Pearson v. Prison Health Serv.*, 850 F.3d 526, 538 (3d Cir. 2017) (quoting *Inmates of Allegheny County Jail v. Pierce*, 612 F.2d 754, 762 (3d Cir. 1979)). A claim that "a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment." *Id.* (quoting *Estelle*, 429 U.S. at 106). Thus, claims that a physician has "inadequately diagnosed and treated" a plaintiff's medical condition does not amount to a violation of the Eighth Amendment if the physician was exercising his professional judgment in his diagnosis and treatment. *Id.*

Sabur's complaint plainly fails to state a deliberate indifference claim upon which relief may be granted. The complaint shows that Sabur was seen by multiple doctors for treatment of his keratoconus and glaucoma and that these doctors prescribed glasses and contact lenses to treat the vision

problems resulting from the conditions. There is no basis to conclude that the doctors—defendants Frantz and Zellis—were deliberately indifferent to Sabur's serious medical need; to the contrary, the complaint clearly shows that they frequently and promptly provided treatment for his medical needs.

The deliberate indifference claims against the non-medical defendants, Mauk and Rowe, similarly fail to state a claim. It is clear from the complaint that Mauk and Rowe were deferring to the prescriptions and medical judgments made by defendants Frantz and Zellis. There are no allegations that Mauk and Rowe had "a reason to believe (or actual knowledge)" that Frantz and Zellis were "mistreating (or not treating)" Sabur. *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004). Absent such allegations, the deliberate indifference claims against Mauk and Rowe plainly fail. *Id.*

Sabur's remaining federal claims for violation of the ADA, retaliation, and abuse of process fail to state a claim because Sabur simply fails to include any allegations in the complaint to support the claims.[2]

## B.    Leave to Amend

Before dismissing a civil rights claim for failure to state a claim upon which relief may be granted, a district court must permit a curative

---

[2] To the extent that the ADA claim is based on the same factual allegations on which the deliberate indifference claims are based, the claim fails for the same reasons those claims fail.

9

amendment unless the amendment would be inequitable or futile. *Phillips*, 515 F.3d at 245. The court will deny leave to amend as futile. It is clear from the four corners of the complaint that the medical defendants were not deliberately indifferent to Sabur's serious medical need and that the non-medical defendants were deferring to the judgment of the medical defendants, and there do not appear to be any facts that could be added in an amended complaint that could alter these conclusions.

## C.   State Law Claims

Having decided that all federal claims are appropriately dismissed, the court will dismiss the amended complaint to the extent it asserts state law negligence claims. Under 28 U.S.C. §1367(c), a United States district court may decline to exercise supplemental jurisdiction over state law claims if "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. §1367(c). "In the ordinary course, 'where the claims over which the district court has original jurisdiction are dismissed before trial, the district court *must* decline to decide the pendent state claims. . . . But it need not do so where considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so.'" *North Sound Capital LLC v. Merck & Co., Inc.*, 938 F.3d 482, 494 (3d Cir. 2019) (cleaned up) (quoting *Hedges v. Musco*, 204 F.3d 109, 123 (3d Cir. 2000)).

10

In this case, it does not appear that any considerations of judicial economy, convenience, or fairness to the parties would justify deviating from the ordinary course of declining to exercise jurisdiction over Sabur's remaining state law claims. The court will accordingly decline to exercise jurisdiction over any state law claims asserted in the amended complaint and dismiss them without prejudice. *See Kach v. Hose*, 589 F.3d 626, 650 (3d Cir. 2009) ("If a district court decides not to exercise supplemental jurisdiction and therefore dismisses state-law claims, it should do so without prejudice, as there has been no adjudication on the merits." (quoting *Figueroa v. Buccaneer Hotel Inc.*, 188 F.3d 1728, 182 (3d Cir. 1999))).

## III.   CONCLUSION

For the foregoing reasons, the court will dismiss Sabur's federal claims with prejudice, dismiss his state law claims without prejudice and close this case. An appropriate order shall issue.

Malachy E. Mannion
United States District Judge

Dated: 4/21/26
26-636-01

11